## McGINNIS v. THE STATE.

CRIMINAL LAW.—COPY OF WRITING.—The court cannot compel the defendant in a criminal prosecution to produce an instrument in writing, in his possession, to be used in evidence against him.

LARCENY.—PROOF OF CONTENTS OF BANK NOTES.—On the trial of a prosecution for the larceny of bank notes, or other written instruments, where the stolen property is alleged to be in the possession of the accused, parol evidence may be given of the contents of the notes or writings, without notice to the accused to produce them.

*Williams* v. *The State*, 16 Ind. 461, overruled.

FELONY.—COMMON PLEAS.—On the trial of an information for grand larceny, in the Court of Common Pleas, no evidence was given to show that the defendant had not been indicted in the Circuit Court for the offense, but it did appear in evidence that the case was tried on the next day after the commission of the offense.

*Held*, that this court will take official notice that the Circuit Court could not have been in session between the commission of the offense and the trial.

APPEAL from the *Vanderburgh* Common Pleas.

ELLIOTT, C. J. — This was a prosecution instituted in the Court of Common Pleas of *Vanderburgh* County, at the *May* term, 1865, against *Peter McGinnis*, for grand larceny, in stealing, among other articles, one *United States* treasury note, of the denomination and value of $10, the personal property of *Andrew J. Harvey*. The information alleged that the defendant was confined in the county jail, on a charge of having committed said larceny, and that he had not been indicted therefor by the grand jury of the county.

The crime is alleged to have been committed on the 4th day of *May*, 1865, and the information was filed on the 5th day of the same month. The defendant was tried by a jury, convicted, and sentenced to pay a fine of $1, and to be imprisoned in the state prison for the term of two years. A motion for a new trial was overruled, and judgment rendered on the verdict of the jury.

The errors assigned are: 1. That the court erred in admitting parol evidence of the contents of the *United States* treasury note alleged to have been stolen, no foundation having been laid for such proof, and no notice served on the defendant to produce the note. 2. That the court erred in overruling the defendant's motion for a new trial.

The evidence is all in the record. It is shown by a bill of exceptions that, on the trial of the cause, *Andrew J. Harvey*, the alleged owner of the property described in the information, was sworn and examined as a witness for the State, and having testified that he and the defendant slept together on the night of the 4th of *May*, and that he missed his money (which was in bank notes,) and his pocket book in the morning, was asked by the district attorney "to describe the contents of the notes which he had missed," to which the defendant objected, on the grounds that "no foundation had been laid on which the State could offer such evidence, and because the State had served no notice on the defendant to produce the *United States* treasury

notes alleged in the information to have been stolen by the defendant." But the court overruled the objection, and the witness thereupon testified that "the bank notes which I missed were *United States* treasury notes; one *United States* treasury note was of the denomination of $10, and, I thought, was of the value of $10. There was also some other money, in all some $18 or $20. I have never seen the pocket book or bank notes since." There was nothing in the evidence showing that the treasury note had passed into the hands of any third person.

According to the ruling of this court in *Williams* v. *The State*, 16 Ind. 461, the court below erred in permitting the evidence of the contents of the treasury note to be given to the jury over the defendant's objection, no notice having first been given to the defendant to produce it. In that case it is said : "Under such circumstances, parol evidence of the contents of the bank notes would seem to be admis-- sible, the defendant having had due notice to produce them; but no such notice was given, hence the evidence was inadmissible. This point has been fully considered by this court in a recent case. *Armitage* v. *The State*, 13 Ind. 441. It was there held that on an indictment of a party for having in his possession counterfeit bank notes, notice must be given to the defendant to produce them, before parol evidence of their contents could be introduced."

The case of *Williams* v. *The State, supra,* was an indict- ment for stealing a pocket book containing bank notes, with a count for robbery of the same articles. In *Armitage* v. *The State,* upon the authority of which the former case was decided, the prisoner was indicted for feloniously hav- ing in his possession, with intent to put them in circulation, forty counterfeit $5 bank notes, issued by the *Market Bank,* and alleged to be in the possession of the defendant, and therefore a more particular description of them was to the jurors unknown. A witness was permitted to testify on the trial, over the objection of the defendant, that he sold

the defendant $200 in counterfeit bills, being $4 and $5 bills on the *Market Bank* of *New York.*

It is well settled in criminal cases, that the court cannot compel the defendant to produce an instrument in writing, in his possession, to be used in evidence against him, as to do so would be to compel the defendant to furnish evidence against himself, which the law prohibits. And it is also evident, where the instrument in writing is the subject of the prosecution, and is described in the indictment in such a manner as to give the defendant an advantage on the trial by producing it, that he will do so. The description of the instrument in the indictment must be such that it would always serve to notify the defendant of the nature of the charge against him, save him from surprise, and enable him to be prepared to produce the writing when it was his interest to produce it. But when its production would be likely to work an injury to the defendant, by aiding in his conviction, it could not be expected that he would produce it in response to the notice. It is, therefore, difficult to perceive what benefit could result, either to the state or the defendant, from the giving of such a notice, while to the defendant it is liable to work a positive injury, by producing an unfavorable impression against him, in the minds of the jury, upon his refusal to produce it after notice.

These reasons apply, perhaps, with equal force, in cases of prosecutions for forgery, as well as in those for larceny; but it is not our intention, in this opinion, to pass upon, or question, the correctness of the rule as laid down in *Armitage* v. *The State,* as applicable to prosecutions for forgery, as there are reasons why a distinction between the two classes of cases, in this rule of evidence, may be drawn.

In cases of forgery, or of knowingly uttering counterfeit instruments of writing, every part of the entire contents of the instrument alleged to be forged constitutes a material part of the subject of the offense, and, therefore,

"the indictment must profess to set out an exact copy of the counterfeit, that the court may see that it is one of those instruments, the false making or passing of which is punishable by law." *The State* v. *Atkins*, 5 Blackf. 458. Or, if the instrument is lost or destroyed, or is in the possession of the defendant, such special fact must be averred as an excuse for not setting out a copy. *Armitage* v. *The State, supra.*

But this particularity is not required in an indictment for stealing a written instrument. The offense, in larceny, consists in the felonious stealing of the personal goods of another of some value, and the description of the instrument in the indictment need only be such as to show its nature and value, for beyond that its contents are immaterial for the purposes of the prosecution, and hence the necessity of producing it on trial, and giving it in evidence, is much less than in cases of forgery. 2 Arch. Crim. Pleading and Practice, side p. 395. This author also sustains the distinction drawn between cases of larceny and forgery as to the rule of evidence. He says: "Upon an indictment for the forgery of a written instrument, the forged instrument must be produced, unless it has been destroyed by the defendant, or unless it be in his possession and he refuse to produce it after notice. But upon an indictment for stealing a written instrument, or destroying a will, or the like, no notice to produce it is necessary, but secondary evidence of the instrument is admissible without it." Vol. 1, 7th ed., top p. 437, and refers to *Rex* v. *Aickles*, 1 Leach 330.

Again: "There are some cases, however, in which a notice to produce is not necessary: first, a notice to produce a notice is not necessary in any case; secondly, in larceny of a written instrument, secondary evidence of it may be given at the trial, without giving the prisoner a notice to produce the original; in the same manner as in civil cases, in trover for a written instrument, the nature of the instrument may be proved, without giving notice to produce

McGinnis *v.* The State.

the original." Same vol., top p. 447. It is said in *Armitage* v. *The State, supra,* that the *"English* courts have pretty uniformly held that there should be no difference in the rule, in that respect, between criminal and civil procedure; that in either, secondary evidence of the contents of a writing should not be received until notice has been given to the opposite party to produce it upon the trial, when it is shown to be in the possession of such party," and refers to *Rex* v. *Gibson,* Rus. and Ryan 138, and *Rex* v. *The Inhabitants of Rawden,* 8 B. and C. 708. We have examined these cases. The latter was a prosecution to remove a pauper from one township to another. On the trial it was proved that the pauper occupied a tenement of £10 per annum, and paid rent and taxes for the same. In answer, it was proposed to prove by parol that the pauper was not the sole tenant, but that the premises were let to the pauper and two other persons; but the witness, on cross-examination, having stated that the letting was by a written instrument, the court held that it could only be proved by the production of that instrument. It was not shown that the writing was in the possession of the pauper, nor was any question as to notice to him to produce it raised or decided in the case. The only report or notice we find of the case of *Rex* v. *Gibson* is in a note to *Rex* v. *Buttery et al.,* 1 Rus. and Ryan 342, in which it is referred to as a manuscript. The note is, that "On an indictment for forging a will, a probate of the will unrepealed was put in, and relied on as a bar, and *Rex* v. *Vincent,* 1 Str. 481, was cited as an authority, but Lord ELLENBOROUGH held that case not law, and the prisoner was convicted and executed." It is evident that neither of these cases affords any authority on the question under discussion.

In the *Commonwealth* v. *Messinger et al.,* 1 Binney 273, TILGHMAN, C. J., in giving his opinion in favor of permitting parol evidence of the instrument, without notice to the defendant to produce it, says, that the law seems to be settled in *England* that there is no distinction between

civil and criminal cases, and that notice must be given to the defendant in a criminal prosecution to produce a written instrument in his possession, before parol evidence of its contents can be given, and refers to the cases of *Le Merchant*, 1 McNally 250; *The King* v. *Aickles*, 1 Leach 330; *The King* v. *Watson*, 1 McNally 234; and *Gates*, qui tam, v. *Winter*, 2 D. & E. 306.

But BRACKENRIDGE, Justice, in his opinion in the same case, says: "If we examine the cases in the books which have been referred to, or which bear upon the point, we shall find that they are cases of evidence of something in the possession of the party originally, or which had come to his possession, and of which it did not necessarily follow that evidence would be offered on the trial, as in the case of *Molton, qui tam*, v. *Harris*, 2 Esp. N. P. 549." We have not been able to find the reports containing the cases referred to by TILGHMAN, C. J.

But whatever may be the rule in the *English* courts, we are satisfied that in this county, the current rule of decisions in prosecutions for larceny is in favor of admitting parol evidence of a written instrument which is the subject of the prosecution, and is in the possession of the prisoner, without first giving notice to produce it; indeed, we have not been able to find a single case, either *English* or *American*, to the contrary, except that of *Williams* v. *The State, supra*. This position is fully sustained by the cases of *Moore* v. *The Commonwealth*, 2 Leigh 701; *The Commonwealth* v. *Messinger et al.*, 1 Binney 273; *The People* v. *Holbrook*, 13 John. 90. In the latter case, the court say: "We are of opinion that parol evidence of the contents and amount of the notes charged to have been stolen was properly received, without accounting for their non-production. It has been repeatedly decided in the Courts of Common Pleas and King's Bench in *England*, that in an action of *trover* for a bond and notes, no notice to produce the thing sought to be recovered was necessary."

The position, in our judgment, is supported both by

reason and authority. We therefore hold that on the trial of a prosecution for the larceny of bank notes, or other written instruments, where the writings *that are the subject of the larceny charged* are alleged to be in the hands of the accused, parol evidence of the contents may be given without notice to the accused to produce them.

It follows that the case of *Williams* v. *The State, supra,* is overruled.

The second error assigned is that the court erred in overruling the defendant's motion for a new trial. The causes filed for a new trial, so far as they are applicable to the question discussed under this assignment of error, are, that the finding of the jury is contrary to the evidence, and that it is also contrary to law. The point raised is that the evidence shows that the information was filed before the offense was committed.

The information was filed on the 5th of *May,* 1865, and the offense is charged to have been committed on the 4th of the same month.

On the trial, *Harvey,* the prosecuting witness, having testified that he and the defendant were deck hands on the same steamboat, on her trip from *Nashville* to *Evansville,* proceeds thus : "We arrived at *Evansville* from *Nashville* yesterday, *Thursday, May* 4th, 1865; in the afternoon of that day, at about 4 o'clock, we, together with the rest of the deck hands on the same steamboat, were paid off. The defendant and I slept together that night, which was last night. The next morning I missed my money, which was in bank notes, and my pocket book," &c. The record shows that the court was in session at the time the information was filed, and all the witnesses speak of the time of the arrival of the steamboat as being the day before the trial, and the circumstances connected with the alleged larceny as having occurred the night previous to, and on the morning of, the day of the trial; and it is insisted by the defendant's counsel that the record shows the trial to have occurred on the 9th of the month, and that the

information, having been filed on the 5th of the same month, was filed before the commission of the offense. In this, however, he is mistaken. True, the entry of the trial was made on the order book on the 9th, but it is preceded by the following statement: "And afterward, to-wit: on the 9th day of *May*, 1865, in the court and before the judge aforesaid, the order in the words and figures following was made, to-wit:" then follows the entry of the trial, but there is nothing in it showing on what day it occurred.

We think it apparent, from the whole record, that the trial, in fact, occurred on the 5th of the month. Besides, the prosecuting witness swore positively that the offense was committed on the night of the 4th of the month, which was prior to the date of the filing of the information. The evidence in the case, though not conclusive of the defendant's guilt, or as to the venue, we think was sufficient to justify the finding of the jury, and we cannot disturb the verdict.

It is claimed that there was no evidence showing that the defendant had not been indicted in the Circuit Court for the offense. No direct evidence of that fact appears in the record, but the evidence shows that the offense was committed on the night of the 4th of *May*, and the cause was tried on the following day. The Common Pleas Court was in session at the time, and we will take judicial notice of the fact that the Circuit Court of the county could not have been in session after the commission of the offense, and before the case was tried in the Court of Common Pleas.

The judgment is affirmed, with costs.

*C. E. Marsh*, for appellant.

*D. E. Williamson*, Attorney General, for the State.